May it please the Court, Matthew Ellis for Plaintiff Appellant. I'd like to reserve two minutes for rebuttal. This Court has held that statements of police officers exposing corruption in a police department are exactly the kinds of statements that demand strong First Amendment protections. A police officer does not shed their First Amendment rights simply because the speech occurs at work or because the speech relates to work. And a speech is, one's speech is constitutionally protected if it's on a matter of public concern and if it's not pursuant to their official job duties. Now, Garcetti, of course, gave us sort of some, a framework to establish, to analyze what official job duties means. And the language from Garcetti is that the proper inquiry is a practical one, that one's written job duties are neither necessary nor sufficient. And sort of what I see as the magic language in Garcetti is that one looks at the job duties that an employee is actually expected to perform. That is, one must sort of scratch beneath the surface to determine whether one's real job duties is or is not consistent with one's written job duties. And the scope and content of those job duties is a factual issue for a jury to resolve under the Posey case. Here, the Court erred because there were genuine issues in granting defendant's motion for summary judgment on plaintiff's First Amendment claim because there were genuine issues of material fact about whether or not the actual duties Ms. Hunt was expected to perform involved obeying a code of silence with regard to officer misconduct. For example, Ms. Hunt was told, don't be surprised if you continue to report misconduct if you don't have a job, and don't be surprised if you don't get backup. Now, these were egregious, retaliatory statements, but they also really go to the heart of whether or not there was a code of silence, because the statements are essentially, your job is conditioned on not reporting misconduct. Your job is not to police the police. And the Court erred in deciding to the contrary. Kennedy. Well, do you do you disagree with the idea that police officers are obligated generally to report unlawful conduct and misconduct to their supervisors? I thought you'd agreed to that previously. I don't. In reading what I saw in your briefs. Whether that is or is not true depends on one's, the facts of one's official job duties. I don't think anyone disputes whether or not. Well, didn't the district court suggest that Oregon law requires police officers to enforce the law, uphold the Constitution, intercede when fellow officers violate the constitutional right of a suspect or other citizen? That's what the district court said, isn't it? It is. Do you disagree with that? I disagree that that is dispositive as to the issue in this case. I don't disagree that it isn't generally relevant, but it's not dispositive of whether Ms. Hunt did or did not. Why is it not dispositive if they have a general duty to report on all unlawful conduct and misconduct to the supervisors? Then it seems to me what we're really talking about, as I understand it, given this, given the case law, we're really talking about the duty pursuant to their official duty. That's what we're really asking about here, is this pursuant to their official duties. So if that's the official duties under the Oregon law, I'm having a tough time understanding why the district court is wrong. Under Garcetti, that is not the official duties. Under Garcetti, you look at the facts. Well, now, just a minute. In Garcetti, it says if an employee is not speaking as a citizen on a matter of public concern, no First Amendment claim lies. And then it says when the public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment. And then the district court cites, which I told you and you, I thought, conceded that officers are obligated generally to report unlawful conduct and misconduct. So I'm having a tough time understanding where you're going past summary judgment. Because that the statement that officers generally have a duty to do one thing or another is only the beginning of the factual inquiry that Garcetti mandates. You can look at what generally it says in the law or in the handbook. Well, doesn't Garcetti say the controlling factor is if the speech is owed to its existence to a public employee's professional responsibilities? Isn't that what Garcetti says? Yes. And isn't this, then, a professional responsibility of police officers? No. No, it isn't, even though their Oregon law requires it. Oregon law requires officers to uphold the Constitution, which is what the district court held, that generally that is true, that there was no analysis in those cases about, there was no dispute in those cases about one's official job duties under Garcetti. And we don't disagree that an Oregon police officer's job is to uphold the Constitution. The question is, what does that mean? What does it mean to uphold the Constitution when there's this? Do we have any disputed facts about what was done here? Absolutely. Yes. We don't. The facts are the same. All you're arguing about is the interpretation thereof. No. Defendant disputes the facts about what the genuine issues of material fact that we see about the nature of official job duties. They did not concede that she was told, don't your job is not to police the police. If you police the police, you're not going to get back up. They dispute that. I see. So ---- I'd like to shift gears for a second. We're talking now. We've been talking about the claim that was disposed of on summary judgment. Yes. Part of the case went to trial. Yes. And there's an issue about whether this police or this psychiatrist's report should have come into evidence. Yes. They say you put her mental state into evidence, and that opened the door to this. What's the answer to that? The psychiatrist you're talking about, you want to talk about the report specifically or his testimony? Well, both. First of all, what did you put into evidence with respect to her mental health? We put into evidence that she ---- that she suffered mental distress and that it was specific that she was frightened of police officers as a result of the retaliation. So it was a damage type of evidence. Yes. Okay. And as a result, Dr. Kleken was permitted to testify only as to damages. And the district court made it very clear, because the district court was very concerned by what defendants said during the pretrial conference about the real reasons why they were calling Dr. Kleken, which was, quote, we decided to do an IME because it became very apparent that it did not appear she was lying, that ---- and that was what ---- Did not appear or did appear? It did not appear. They said, quote, it appeared that she honestly believed these things, and that's why we hired the IME. One of their other answers to your argument is that you didn't timely object to this stuff. What's your answer to that? We did. As to the report, first of all, the expert report wasn't on an exhibit list. It was added at the ---- defendants offered it at the end of the pretrial conference, and we objected. We said, I don't think we've made this at ---- we've ---- this doesn't come in under Rule 106. And the judge said, no, that's not why it's coming in. And then we objected again at trial to make sure the record was clear. And then when Dr. Kleken testified in open court that Ms. Hunt tends to read motives in other people that are not warranted by the evidence and tends to misinterpret and misread events, which is what this case was all about, what were the motives and what were the ---- This testimony went to her on suitability as a police officer rather than her damages, I guess, in other words. Would she? Yes. Okay. I mean, arguably, her suitability as a police officer relates to damage. I'm troubled by the admission of this report, so I'm trying to figure out, you know, your answers to their explanations for why this is not reversible. One of their ---- one of their answers is that this was redundant of his testimony, which came in without objection. Is there anything to that? Well, we objected immediately and moved to strike his testimony immediately. And the Court did not grant that motion to strike. I don't know if it's redundant or not. The report include language about how Ms. Hunt imagines things, that she ---- that her testimony tends to indict the entire police department and tends to suggest they're all corrupt, and that as a result, that really must be false. That's what this case was all about. Her testimony did indict the department. She did say it was corrupt. And Dr. Kleekin should not have been permitted to say, and I don't believe her. So as I understand it, the report was redacted? It was redacted in part. Did you have a chance to take part in that redaction? After the Court ruled that, yes. You didn't answer my question. Yes or no? Yes. And were there any parts redacted that you said, or any parts left in the report that you asked to be redacted that were not? I don't specifically recall. Well, I read the records, so I was trying to see if, in fact, there was parts in that that were redacted that you asked to be redacted. It would seem to me you have a pretty good argument, maybe an argument nonetheless. But I'm trying to, if you had a chance to stop this thing, the evidence from going in that went in, and everything that you asked to be redacted was, and then it went in even though you didn't want it to go in. I'm trying to figure out what there was in there that you didn't want in because you had every chance to get rid of it. Well, I'm not sure if we had every chance to get rid of it. This was something that was added. Well, but you had the chance to redact anything you wanted, as I understood. We objected. We objected to the report coming in at all. I understand that. And then we were in, because we had no chance to assume. We didn't assume the report was coming in because it wasn't on an exhibit list. It was just added at the last minute. Why was it redacted at all? Pardon me? Why was it redacted at all? Because the district court had really serious concerns, and as did we, about the content of the report. And why would they have concerns? I thought the whole thing was that it might have a chance to get in. Otherwise, why would they care? I mean, I was a DJ. I never let in reports. So if I was going to redact reports, I would think I was thinking about letting it in, or I wouldn't have had any redaction done. The core basic — the basic premise of Dr. Kleekin's testimony, which is — which in everything in the report falls out of it, is that Ms. Hunt has a condition that causes her to lie. So the entire report should have been redacted, because everything fell out of that diagnosis. And that diagnosis isn't helpful for the jury, because the jury is the one who decides whether or not she's lying, and about the events in the case, about the facts of the case. And that was the intent for this testimony. That was the purpose of this testimony. And it was improper. I'll ask you briefly about another element, which is the jury verdict with regard to retaliation, that is, that the jury found that the city did not retaliate for her reports of criminal activity. Why doesn't that dispose of the whole claim? Because the — her protected First Amendment reports are broader than the reports of criminal activity. She reported that the police department was accepting goods from convenience stores as gratuities, which, by the way, that was not disputed, in direct violation to their own written policies, which dovetails back to how much weight do we give written policies at all if they're not worth the paper they're written on? Basically, the jury wasn't asked, was she retaliated for these First Amendment protected activities? She was only — they were only asked, was she retaliated against for the reports of criminal activities, which is narrower. Narrower, but more serious. I mean, it seems to me implausible that somebody's not going to be terminated for blowing the whistle for somebody committing crimes, but will be terminated for blowing the whistle on accepting something from a convenience store. The jury wasn't asked whether it was plausible or not. And actually, in this case, the evidence was that a lot of the retaliation was because of the noncriminal complaint that officers weren't allowed to receive free goods at convenience stores anymore. The officers, according to the evidence that I think was produced at summary judgment and certainly at trial, was that Ms. Hunt understood that a lot of the retaliation was because of that issue, not because of what you and I might think are the more serious allegations of criminal violations, but that they weren't allowed to get free cokes anymore. So the jury very well may have concluded it wasn't because of A, B, and C, criminal activity. It was because of this — I mean, cast doubt on her credibility or whatever, that taints the verdict. Verdict on the claim to dignity of the jury. You've got about a minute and change left. I'm going to sit down then, unless the Court has pressing questions, and take my last minute in rebuttal. Thank you. Thank you. Good morning. Good morning. May it please the Court. My name is Harry Auerbach, and I represent the appellees in this case. I'd like to start with Dr. Klieken's testimony, unless the Court wants to go somewhere else first, because I think that puts the whole — the rest of the dispute into context. When the — at the pretrial conference, when the Court took up the motions in limine, the plaintiff objected and filed a motion in limine against the admission both of Dr. Klieken's testimony and his report only on one ground. That ground was her claim that the doctor did not conduct his examination of the plaintiff in accordance with the district court's instructions. The district court resolved that issue against the plaintiff, and she does not pursue that on appeal. That was the only basis that she raised for the exclusion either of his testimony or the report. On its own motion, the Court said it was troubled by some of the contents of the report, and it was going to limit both the report and the testimony in order to keep Dr. Klieken from testifying about plaintiff's credibility. Plaintiff never objected that Dr. Klieken was not allowed to testify as to his opinion that, on the merits, that he was not allowed to testify as to his opinion that plaintiff had this preexisting condition, that it wasn't caused by the police, and that it caused her to be unable to perform as a police officer somewhere else. Plaintiff never claimed at trial, at least as far as the record disclosed, she never raised an objection at trial that Dr. Klieken's testimony in court went beyond the parameters that the district court had set. She did not object to anything he said in court as being beyond the scope of the opinion that the district court said he was entitled to give. In fact, so and in fact, if you go back and read his testimony, he never said in court that plaintiff, in fact, misperceived the motives that she attributed to the defendants. What he said was that he had that his diagnosis of her was that she had this paranoid personality disorder or traits of that condition. He described what some of those traits were, namely that people with that condition tended to misperceive things or to read motives into people, but he did not say that plaintiff herself did that. Roberts. He said there was no objection to that. At the end of his description of the specific traits of a person with that disorder, the doctor said, I'll get this exactly for you. They objected to one thing that the doctor said, and I will find it for you in the record. Actually, I've got it noted here. It's in the excerpt of record at 36, ER 36. At the end of his response to a question, his lengthy response to a question about the traits of a person with personality disorder, he said they tend to misinterpret, misread events. And the plaintiff at that point objected and moved to strike that sentence. She said, move to strike that last sentence. There was then a conversation that was held that is not reported. So we don't know what was said to the district court beyond that or what the district court's actual ruling was. When they went back on the record, the district court instructed the defendant's lawyer to continue her examination. So whatever that objection was, it's not properly preserved. There's no way for this Court to assess whether the district court did or did not err in whatever it did or did not do in response to plaintiff's objection, because he failed to get it on the record. Let me ask you this, leaving aside the objection for a minute. As I understand the story, what happened is she offers psychological evidence to show that as a result of whatever happened at the police department, she has suffered anxiety, bad dreams, whatever. Correct. Dr. Kleken was called to rebut that. Correct. But it wasn't limited to rebutting that. He then, whether it was objected to or not, offered opinions about her general character as being paranoid and a perfectionist and so forth. Incorrect. He offered his testimony as to her condition, her paranoid personality disorder, in order to explain that she, A, had that condition before she became a Portland police officer, that the Portland Police Office or the Portland Police Bureau did not cause her to suffer from that disorder, and that that disorder was the reason and not anything that the Portland police did that she could no longer function as a police officer. That's all he testified to. He testified as to what some of those traits were, but under this Court's decisions, most recently in the Lukashenko case, I think the name of the fellow was, that we cited in our additional authorities, that's entirely proper for a statement of what the condition is and what the traits are. That's not objectionable. He opined that she suffered no psychological injury as a result of what happened to her. Well, on cross-examination, he said he didn't he wasn't saying she didn't have emotional distress. He said she did not suffer any recognizable psychological disorder as a result of what happened to her in the Portland Police Bureau. Okay. But it wasn't left at that. It was all these all the baggage she brought with her to the police department that came in. Right. Okay. Now, would you agree that the report was hearsay? Yes. Parts of the report are hearsay. Well, it's all out of court, right? It's an out-of-court declaration. Yes. And then we'd have to per per He wrote the report in his office, right? He wrote the report in his office. Correct. It's an out-of-court statement. And it was offered to prove what was in the report. I'd have to go we'd have the court would have to go through Was it offered for any other purpose? All of that was offered for the truth of the matters asserted. Was it offered for any other purpose? Yes. It was offered to provide context for the doctor's diagnosis. I don't know what that means. I mean, the context is this is it's true. What she said to him, what she said to him, the truth of what she said to him was not itself. No. But he's he's the he's the declarant. He's saying this is what she told me. Right. And it was offered to prove that this is what she told him. So it's offered for the truth of what he says. Okay. Okay. And the next question is, we agree it's an out-of-court declaration and it's offered for the truth. The next question is, is was there any exception that would permit it? Well. It wasn't done for the purposes of diagnosis for her. Well, I I I'm not sure that's correct. She wasn't seeking him for medical treatment, was she? But we were seeking a diagnosis. Yeah. But she's the one who's the one who's got to seek it. So. Well, the fact that you were doing it, it's in anticipation of litigation. That has nothing to do with the normal course of business. Well, except that that forensic psychiatry is his normal course of business. Well, let's assume she's not going to Dr. You don't want to fight with me about whether she was seeing Dr. Kleken for treatment, do you? No. Okay. Then is there any other exception that would cover it? Well, the one that that the that we raised was that because the plaintiff had offered documents that were related to the report in order to undermine the doctor's credibility, we were entitled to introduce the report itself. That's Rule 106? That is correct. But there's nothing under Rule 106 that says hearsay gets admitted, is there? Yes. What? That's the rule of completeness. That's the rule. Yeah. I mean, that's that that is the exception, is that if you offer something that's otherwise not admissible. 106 is a hearsay exception rule? I believe it does allow you to do that. Doesn't it say if you introduce part of a document, the other side gets to introduce the rest of the document to prevent unfairness? Or related documents. Yeah. Or related documents. Okay. What document does this relate to? It related to the the billing. There were there were three or four documents which are in the record that that they his billing statement, the statement about the MMPI. Okay. Let's suppose we don't buy those arguments. Okay. What what other basis what what other the objection was not timely raised and it was not prejudicial. The objection wasn't timely raised. I'm looking at ER 31, page 1024 of the transcript, and have Mr. Rella's hearsay for which there's no exception, it's also should be excluded under Rule 403, it's highly prejudicial and so forth. Right. And this is before it went to the jury. Why isn't that in time? Because the Court had made clear in its pretrial management order that all those objections were to be made at the pretrial conference. And it was not made at the pretrial conference. The Court had already gone through the report and gone through all of the the redactions, invited the plaintiff to offer other redactions, one of which she did and the Court sustained, and then ruled that the report was admissible. So it's your position that when counsel for the city stands up and says I move into evidence this report, he can't stand up and make an objection to it? What I can't stand up and say it's hearsay and it violates Rule 403. We offered it. It was offered in the at the end of the pretrial conference. And it was received at the end of the pretrial conference. The Court indicated that as redacted. I just want to make sure I'm clear on what your position is. When a lawyer stands up and says I offer this report, the other guy can't say anything? Our position, to be clear, is that when the Court directs people as to how to make their objections, it has the discretion. It acts within its discretion when it declines to entertain objections that are not made in conformance with its order. That's part of the trial court's discretion in managing the its trial cases. And the Court here clearly did that. It made clear its expectations about objections to evidence. There was no surprise in any of this. They had a full hearing at the pretrial conference about what should be done with this report. They never said at that time that they objected to it on the grounds that it was hearsay. So the objection came in too late, and the Court simply said I'm the Court acted within its discretion in not revisiting the issue in the course of the trial. That's our position on the timeliness. But the end, the question is whether the admission of the report, even if it was error, more probably than not affected the outcome of the trial. And our position on that is you can say with confidence that it did not do that because the doctor was there and he testified consistently with his report, largely without objection. The plaintiff testified and testified on cross-examination that people didn't actually say to her the things that she interpreted them as having said to her. I mean, they asked, she was asked repeatedly. Well, they didn't actually say that, did they? And she had to admit, no, they didn't actually say that. There's a — that material is in my supplemental excerpt of record. You can see it. The jury had a full opportunity to assess the testimony of the plaintiff, of the defendants, of all the witnesses, and of Dr. Kleken. And irrespective of his report, you can safely say that this case would have come out the same way with or without the admission of that report. And therefore, even if it was admissible, it was not — it's not — it was — even if it was inadmissible, it's not reversible. If the Court has — I mean, I can address the First Amendment issue, and I will say there was no genuine issue of fact about the First Amendment issue. That is, the plaintiff admitted that she was trained on the city policy and the bureau policy respecting reporting of misconduct. She was told by the people to whom she reported it that she had done the right thing and that they were going to follow up on it. They, in fact, followed up on it and disciplined her — her training officer. So the trial court did not err in determining that the reports were made in the context of her — as part of her employment duties, and therefore, that the First Amendment claim would not lie. The Court has no further questions. Roberts. Thank you, Mr. Albrecht. I appreciate it. Mr. Ellis. Let me ask you — you can see I'm concerned about this here, say, business. He says you allowed the doctor to testify about her preexisting condition without objection, and therefore, the stuff that was in the report simply was a repetition of that. He said you only made an objection to — to his testimony with respect to the not revealing the protocol questions properly. I'm not sure if I'm really following the question. We objected to him testifying that she tends to misread events and over-imagine things that are happening that aren't actually happening, and we objected both during the pretrial conference and prior to Dr. Kleeking's testimony. On what ground did you object to that? To the report coming in. And what was the basis of the objection? 401 and 403. And during the pretrial conference, I'll concede that the objection was, you know, wasn't as clear as it could have been, but the district court said — Well, it wasn't here, say, at all, was it? Yes, it was here, say. And the district court made it clear that it wasn't coming in under Rule 106 when we said, I don't think we've opened the door to this coming in. You're talking about the report or the testimony? The report. Okay. I'm talking now about the testimony. He says, let me put the best gloss on it that I can. Even if the report shouldn't have come in, you let him testify to the same thing, so there's no harm, no foul. We — we objected promptly when he went and testified on things other than damages. He was allowed to testify about damages. Her mental health was at issue as to whether or not she was damaged or not. He was not allowed to testify that she tends to make stuff up. And when she did, we objected. And we moved to strike it, and the Court did not grant the motion to strike. Okay. Thank you very much, gentlemen.  Good morning. 11-35655, Cannon v. Polk County District Attorney. Each side will have 15 minutes.
judges: Silverman, Clifton, Smith